UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAQUAIN YOUNG,<br><br>    Defendant. | Case No. 3:13-cr-00764-WHO-1<br><br>**ORDER DENYING DEFENDANT YOUNG'S *KASTIGAR* MOTION**<br><br>Re: Dkt. No. 934 |

## INTRODUCTION

The government's use of a confidential informant to engage in a day's long recorded conversation with defendant Jaquain Young while he was in a holding cell in federal court at 450 Golden Gate Avenue, San Francisco, California has precipitated significant motion practice over the last eighteen months to insure that the government is not using and will not utilize any wrongfully obtained information. *See* Dkt. Nos. 463, 895 and 1073. This Order denies Young's motion under *Kastigar v. United States*, 406 U.S. 441 (1972), that the government impermissibly learned his privileged trial strategy as a result of the conversation.

To review, the government was aware of the potential for invading the attorney-client privilege as a result of using the informant and employed a taint procedure to redact parts of the conversation that were arguably inadmissible because Young's right to counsel under the Sixth Amendment had attached for the then-pending charges. The prosecutors have consistently represented in open court that they have not listened to or had access to the tainted communication. I required the government to provide Young with written discovery concerning its procedures and notes regarding this matter. Assistant United States Attorney Hasib, the taint prosecutor, filed a detailed declaration describing his work and method of maintaining the

confidentiality of the transcript of the conversation. Dkt. No. 1081. I further ordered a special hearing to elicit testimony from the two case agents who set up and oversaw the conversation and maintained the recording after it was concluded. Dkt. No. 1103.

After reviewing the evidence and testimony and considering the arguments of counsel, I find that the members of the prosecution team, including the case agents, have been successfully insulated from Young's privileged trial strategy information. The prosecution team cannot use information that it has never learned, and so it has met its burden to show that there has been no prejudice under *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003). Consequently, no additional hearings on this matter are necessary, and Young's *Kastigar* motion is DENIED.

## BACKGROUND

On April 4, 2013, Young was indicted for (1) attempted enticement of a minor to engage in prostitution, in violation of 18 U.S.C. § 2422(b); and (2) attempted enticement of an individual to travel for prostitution, in violation of 18 U.S.C. § 2422(a). *United States v. Young*, No. 13-cr-00229-EMC (N.D. Cal. filed Mar. 13, 2013) at Dkt. No. 10. The underlying criminal complaint explains that the FBI and SFPD had been conducting an investigation into CDP, "a racketeering enterprise suspected of sex trafficking, distribution of controlled substances, gun trafficking, robbery, and murder," and that Young "is a member of CDP and a subject of the investigation." *Id.* at Dkt. No. 1 ¶ 12.

In August 2012, as part of this investigation, an undercover SFPD officer posed as a minor online and made contact with Young through Facebook. *Id.* ¶ 13. After exchanging a number of messages with Young over the course of several months, the undercover officer arranged to meet with Young in San Francisco. *Id.* ¶ 22. Young was arrested on March 11, 2013 while walking towards the arranged meeting place. *Id.* The pimping charges followed. According to briefing submitted by the government in the pimping case, Young was with another CDP member when he was arrested on March 11, 2013. *Id.* at Dkt. No. 20 at 3.

On June 18, 2014, Young was brought to the courthouse at 450 Golden Gate Avenue, San Francisco, for a hearing before the Hon. Edward M. Chen on the pimping charges. FBI Special Agents Jake Millspaugh and Joseph Atneoson arranged to lock Young in a holding cell with

1  another inmate who was acting as an informant and who was wired so that his conversation with
2  Young could be recorded. The agents instructed the informant that he should not discuss Young's
3  pending case but that he should "feel free" to initiate conversation "on the stuff . . . we're
4  interested in." Opp. at 3-4 (Dkt. No. 738).

5  The informant proceeded to capture approximately 6.5 hours of conversation with Young.
6  The government represents that all portions of the recording regarding the then-pending pimping
7  charges (approximately 38 minutes of the recording) were excised by a "taint reviewer," and that
8  the prosecution team in this case has not been exposed to the excised portion. I previously
9  suppressed the 38 minutes of tainted conversation and have rejected the government's requests to
10 review them. Dkt. Nos. 475, 895.

11 On October 6, 2016, I issued an interim order on Young's *Kastigar* motion, explaining
12 why further evidence and testimony was necessary to determine "the extent to which the
13 government's taint team procedures eliminated its intrusion into the attorney-client privilege when
14 it recorded a day long conversation between its informant and defendant Jaqu[a]in Young."
15 10/5/16 Order at 1 ("Prior Order")(filed under seal)(Dkt. No. 1073). The purpose of the hearing
16 was to examine whether "all members of the prosecution team, including the lead investigator,
17 were successfully insulated from *ever* learning Young's privileged trial strategy information." *Id*.
18 at 5. I determined that I would first hear the testimony of the case agents and then decide if a
19 second hearing would be necessary to resolve Young's motion. *See* 10/5/16 Order at 1. The case
20 agents' testimony occurred on December 16, 2016. Dkt. No. 1103.

### LEGAL STANDARD

22 The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall
23 enjoy the right … to have the Assistance of Counsel for his defence." U.S. Cost. Amend. VI.
24 This right, meant to assure fairness in the adversarial criminal process, attaches when the
25 government initiates adversarial proceedings against a defendant. *Massiah v. United States*, 377
26 U.S. 201, 205 (1964). The Sixth Amendment right is offense-specific, and "[g]overnment actions
27 that deliberately elicit incriminating statements from an indicted defendant in the absence of
28 counsel" violate it. *United States v. Danielson*, 325 F.3d 1054, 1067 (9th Cir. 2003).

In *Danielson*, the Ninth Circuit applied a two-step test to identify Sixth Amendment violations in cases where the government's interference with a defendant's attorney-client relationship results in the prosecution team obtaining the defendant's trial strategy. *See id.* at 1069–70 (adopting the First Circuit's burden-shifting analysis requiring a showing of actual prejudice, with a *Kastigar* "gloss" placing the burden of showing non-use on the government). First, the defendant must make a *prima facie* showing of prejudice by pointing to affirmative acts by the government that intrude into the attorney-client relationship. *Id.* at 1071. Then, the burden shifts to the government to prove the defendant has not been prejudiced. *Id*.

## DISCUSSION

In the Prior Order, I found that "the government acted affirmatively in a way that intrudes into the attorney-client relationship[,]" 10/5/16 Order at 1, "necessitat[ing] the burden shift articulated in *Danielson*." *Id*. at 6. Therefore, I "directed that the government produce all written reports or documents generated prior to or after the conversation that reference the subject matter of Young's redacted testimony or trial strategy, contemporaneous notes on the same subject, and the evidence of the procedures employed to make the taint team effective (such as those related to the Steps to Avoid Taint as described in the Department of Justice Criminal Resource Manual)." *Id*. The government did that. I also concluded that a hearing was necessary to determine "[t]he extent to which the government's taint team procedures insured that the prosecution team (including the case agents) was not exposed to Young's trial strategy… ." *Id*. at 7. On December 16, 2016, the agents testified and underwent an effective cross-examination.

I was particularly interested in the answer to "at least two questions: (i) is anyone on the prosecution team *aware* of the contents of those 38 minutes (whether or not he or she listened to the recording), and (ii) has the prosecution team indirectly used the tainted evidence in the myriad of possible ways articulated by the *Danielson* court?" *Id*. at 5–6. I now have those answers.

In the Prior Order, I determined that *Danielson* rather than *Weatherford v Bursey*, 429 U.S. 545 (1977) was most applicable for my analysis of the first part of the test because Young had made a prima facie showing of prejudice by pointing out the affirmative act of the government that

4

might intrude on the attorney-client relationship—putting the confidential informant in the cell with Young for a day—and that there was actual evidence of the intrusion given the 38 minutes of tainted testimony. The burden then shifted to the government to show that there was no prejudice from its action.

There is no Sixth Amendment violation unless there is prejudice. *Danielson*, 325 F.3d at 1069 ("It is largely a matter of semantics, but in this circuit we fold the prejudice analysis into the analysis of the Sixth Amendment right itself when the prosecution has improperly interfered with the attorney-client relationship and thereby obtained information about trial strategy."); *id.* ("We have construed *Weatherford* to mean that there is no Sixth Amendment violation unless there is prejudice."). "From *Weatherford* ... it is apparent that mere government intrusion into the attorney-client relationship, although not condoned by the court, is not itself violative of the Sixth Amendment right to counsel. Rather, the right is only violated when the intrusion substantially prejudices the defendant." *Id.* (quoting another source). As *Danielson* notes, "The particular proof that will satisfy the government's 'heavy burden,' *Kastigar*, 406 U.S. at 462, will vary from case to case...." *Id.* at 1072. The quantum of proof Young wants the government to provide— that "all of the evidence it proposes to use, and all of its trial strategy, were derived from legitimate independent sources"— is unnecessary in this case. Young's Br. at 1. The difference between this case and *Danielson* explains why.

In *Danielson*, similar to this case, the confidential informant obtained trial strategy information before the government was involved and continued having communication with the defendant after the government knew he had done so. Unlike this case, the informant continued to feed trial strategy information to the lead investigator over time. The investigator provided the prosecutor with memoranda and transcripts involving the privileged trial strategy information. None of this was disclosed to the defendant. *See id.* at 1069 ("the problem in this case is that [the informant] obtained, *and communicated to the prosecution team*, privileged trial strategy information")(emphasis added). Here, the government instructed the informant not to ask questions about the pending prosecution and employed a taint procedure that insured that any improper questions and privileged answers were segregated and redacted from the information

given to the prosecutors and case agents.  Moreover, testimony of the case agents, a sworn declaration of the taint prosecutor, and the representations of this case's prosecutors in open court establish that neither the prosecutors nor case agents have reviewed or learned anything substantive about the tainted testimony. These facts, established on a much more complete record than was before me when I drafted the Prior Order, are more akin to *Weatherford*, where "the Court knew … that [the informant] had not communicated anything, including privileged trial strategy information, to any member of the prosecution team." *Danielson*, 325 F.3d at 1069. Under such circumstances, the government's use of the confidential informant could not substantially prejudice Young. *Id*. ("Substantial prejudice results from … the prosecution's use of confidential information pertaining to defense plans and strategy… .")

Under *Danielson*, "[i]t is true that once the government has improperly interfered with the attorney-client relationship and thereby obtained privileged trial strategy information, the prosecutor has the 'heavy burden' of showing non-use." *Id*. at 1071.  But the *Danielson* court rejected a per se rule that mere possession of privileged information would be sufficient to establish prejudice. *Id*. at 1070–71.  Under *Danielson*, to "obtain" privileged trial strategy information must mean more than merely to possess it.  The prosecution must have actually learned the information to warrant a showing of non-use.  Since the government has presented evidence that the prosecution team never learned any of Young's trial strategy, there is no reason to go to the additional step of having the government describe all of the evidence it intends to use against Young.  By showing that "there has been … no prejudice to the defendant," it has met its burden at step two of the test. *Id*. at 1071.  There is no Sixth Amendment violation.

Young identifies a number of problems with the way the government proceeded in this matter.  For example, (1) Millspaugh possessed an unredacted copy of the recording for an extended period of time, during which it was not sealed or secured, and access to it was not logged; (2) no taint team was employed and none of the DOJ's Steps to Avoid Taint were utilized; and (3) the agents listened live to the first 45 minutes of the conversation between Young and the informant, 10 minutes of which were later redacted.  Young's Br. at 2, 6.  Young argues that "[t]he agents' testimony revealed that, despite being aware of the risk of taint, the prosecution team took

no measures to insulate their team from Mr. Young's privileged trial strategy obtained by their jailhouse information." *Id*.

I agree that the agents could and should have been more proactive and purposeful in their attempts to guard against taint, especially given Millspaugh's "assumption that the recording was tainted."[1] Young's Brief at 9 (citing Hr'g Tr. at 64:1–2). But the procedures they implemented appear to have been successful. The taint team, once it was activated, redacted 38 minutes from the recording. The case agents testified—and the prosecutors have represented—that no one on the government team has learned what was redacted or *any* privileged information. Hr'g Tr. 30:12–17 ("Q: At any point since you started interacting with this informant, whether it's before June 18th 2014, or after June 18th, 2014, have you obtained any substantive information about Jaquain Young's legal strategies or trial strategies or communications with counsel? A: No."); *see also* Hr'g Tr. 18:22–19:22; 91:11–92:6; 127:15–20. Hasib's declaration demonstrates his control over the material since he has been involved. Dkt. No. 1081. In short, the prosecution team has been effectively insulated from the contents of the unredacted recording, generating "the same absolute confidence" in non-use as the court in *Weatherford v. Bursey,* 429 U.S. 545 (1977). *See Danielson*, 325 F.3d at 1067 (distinguishing *Weatherford* by emphasizing that the informant in *Danielson* "reported regularly and extensively … what he had learned about [defendant's] trial strategy[.]").

In the Prior Order, I indicated that "[t]he initial question is, who has knowledge of what Young said." 10/5/16 Order at 6. I am now confident that no one on the prosecution team, including the special agents, has listened to the unredacted recording. As for the redacted portion near the beginning of the conversation that took place while the agents were listening live through the cell's intercom system, which lasted approximately 10 minutes, I do not see how the information pertains to Young's legal strategy even if the agents could have heard it clearly.[2]

---

[1] This assumption was based on the informant's disclosure that the conversation contained a discussion of Young's pending case. Young's Br. at 9 (citing Hr'g Tr. at 47:10–18).

[2] The agents credibly indicated that they wanted to be sure the conversation was going smoothly but that it was difficult to hear what was being said because of noise in the holding cells. Hr'g Tr. at 17:21–19:7.

Young's Br. at 6. That portion was excised because it included comments on Young's then-pending charges, not Young's trial strategy (the focus of the inquiry under *Danielson*). *Id.* at 1059. This does not show substantial prejudice.

Young challenges the veracity of Millspaugh's testimony. For example, at one point the informant left the holding cell and met with the agents. The informant described a portion of the conversation, and Millspaugh responds, "Yeah, I saw him doing that." Young's Br. at 8 (quoting 6/18/15 Tr. at 46:18–20). At the hearing, Millspaugh confirmed that he did not hear the discussion referenced by the informant, but that he had discerned the contents of the conversation from Young's gestures. *Id.* (quoting 12/16/16 Hr'g Tr. at 59:1–17). Young points to the video recording produced by the government to demonstrate that he was obscured from view, so it would have been impossible for Millspaugh to determine the subject of the conversation from his gestures. *Id*. (citing Craig Decl. Ex. N, video recording of 6/18/14 jailhouse conversation). While Young's argument identifies potential inconsistencies in Millspaugh's recounting of this exchange, the communication does not refer to Young's trial strategy. There are other benign explanations for Millspaugh's testimony. The alleged inconsistency is of little relevance.

Young also complains that Millspaugh found and destroyed one of the copies of the unredacted recording after my Prior Order directing the government to produce all documents that related to how the recordings were maintained. Young's Br. at 10. Young summarizes his misgivings as follows: "why keep make [sic] and keep multiple copies of a recording that you know contains privileged information and that you are not permitted to listen to and why destroy it when the court orders you to produce documents regarding your access to that same information?" Young's Br. at 11. While these are good questions, I accept Millspaugh's testimony that my Order was not the reason he destroyed the copy and do not see how destruction of it implicates concerns related to Young's motion. *See* Hr'g Tr. at 67:22–68:12.

While Young insists that "blanket denials are not good enough[,]" Young's Br. at 11, that is not what we have here. The case agents have testified under oath that they never learned of Young's trial strategy; the taint prosecutor submitted a declaration that, since the time he became involved in this matter, he alone has listened to the unredacted recording; and, the prosecutors

have repeatedly represented in open court that they are not aware of the contents of the recording's excised portions. This is not a case, as Young contends, where "[t]he government seeks to shift this burden by arguing that its undisputed possession of Mr. Young's privileged information is not enough, and that it is Mr. Young's burden to prove that the prosecution team listened to or otherwise used the information in its possession." Young's Br. at 3. As dictated under *Danielson*, the burden shifted to the government, and it has demonstrated by a preponderance of the evidence that it successfully "insulat[ed] itself from privileged trial strategy information that might thereby be obtained." *Danielson*, 325 F.3d at 1072; *see* Hr'g Tr. at 4:16 ("The burden had shifted… ."). By doing so, it addresses the potential for prejudice, avoids any further burden of showing non-use, and ends the inquiry under *Kastigar*.

## SEALING

There is nothing in this Order that requires sealing, and so it will be filed on the docket. Mr. Hasib and counsel for Mr. Young shall meet and confer to discuss unsealing some or all of the other pleadings and documents that have been filed under seal during the pendency of this motion, and shall report on the results of the meet and confer in the Joint Status Report to be filed on March 22, 2017.

## CONCLUSION

For the foregoing reasons, I find that the government has demonstrated that it has not learned of Young's privileged trial strategy information. Young has not been prejudiced by the government's conduct. No further hearings are necessary on this issue. Young's *Kastigar* motion is DENIED.

**IT IS SO ORDERED.**

Dated: March 9, 2017

William H. Orrick
United States District Judge